**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>Hali Maeann Suazo<br>                    Debtor. | Case No. 20-17836-TBM<br>Chapter 7 |

**UNITED STATES TRUSTEE'S STATEMENT OF SUPPLEMENTAL AUTHORITY**

Patrick S. Layng, the United States Trustee for Region 19 (the "UST"), respectfully submits this Statement of Supplemental Authority related to his pending motion pursuant to 11 U.S.C. §§ 105(a), 329(b), 526[1] and Fed. R. Bankr. P. ("Rules") 2016 and 2017, to examine the reasonableness of fees charged by debtor's counsel, Jonathan P. Shultz ("Shultz") and Ovation Law LLC ("Ovation") in the above-captioned chapter 7 case, to order the cancellation of attorney fee agreements, the disallowance and return of fees paid by debtor, and to enter appropriate injunctive remedies and civil penalties.

**INTRODUCTION AND BACKGROUND**

1.     The UST filed his Motion to Examine the Reasonableness of Fees Charged by Debtor's Counsel Under 11 U.S.C. § 329 and Review of Attorney Conduct Under 11 U.S.C. § 526 and 105 (the "Motion" at Docket No. 33) on April 22, 2021.  The UST's Motion was filed in the above-captioned chapter 7 case of Hali Maeann Suazo (the "Debtor").

---

[1] All references to the "Bankruptcy Code," "section," or "§" refer to Title 11, United States Code, unless expressly stated otherwise.

1

2. Shultz and Ovation (together "Counsel for Debtor") filed a Response and Objection to the Motion on May 13, 2021 (at Docket No. 40).

3. On June 29, 2021, the Court set deadlines and scheduling for the contested matter of the Motion and Response and Objection which were set out in the Minutes of Proceeding/Minute Order (at Docket No. 45) (the "Scheduling Order"). The Scheduling Order was modified on October 12, 2021, by entry of a subsequent Order (at Docket No. 57) which reset certain deadlines and rescheduled the evidentiary hearing in this contested matter to now be scheduled for Wednesday, December 8, 2021.

4. The Scheduling Order and subsequent Order which reset certain deadlines for the contested matter state that "[a]ny party that wishes to provide further legal briefing or to update the Court as to the status of the case law that relates to the contested issue in this case must file such briefs by no later than November 22, 2021." Pursuant to the Scheduling Order and subsequent order, the UST files this Statement of Supplemental Authority.

5. The UST's Motion outlines specific concerns regarding Counsel for Debtor's fees and business model in representing chapter 7 debtors. The Motion raises specific concerns, including:

    a. Counsel for Debtor's bifurcated fee model violates the Local Rules, inflates attorney fees for debtors who enter into post-petition fee agreements, and is unreasonable under 11 U.S.C. § 329 and L.B.R. 9010-1.

    b. Counsel for Debtor's fee disclosures are inaccurate and incomplete as it is not explained that upon filing Debtor's case, Shultz and Ovation were already required to

provide all the Basic Services as provided for in the Local Rules and would not be allowed to withdraw until the Basic Services were completed, in violation of 11 U.S.C. § 329.

c. That the two-contract "zero down" model Counsel for Debtor provides is an illusory mechanism which results in inflated fees and violates the Local Rules which prohibit unbundling. The "zero down" model serves as a re-affirmation or memorialization of Shultz and Ovation's pre-petition agreement and would serve to disguise Shultz and Ovation's post-petition collection of a pre-petition obligation.

d. Counsel for Debtor's fees are excessive for Debtor's uncomplicated chapter 7 case. Shultz and Ovation charge less for the same amount of work when attorney fees are paid up front and not through a bifurcated pre and post-petition fee model as is present in Debtor's case.

e. Shultz and Ovation appear to be engaged in a pattern of entering into agreements to unbundle services in violation of Local Bankruptcy Rule 9010-1 and effectively imposing a considerable financing surcharge to chapter 7 debtors. If the agreements used in this case are indicative, Shultz and Ovation not only engaged in a pattern of violating Local Rules but have done so with misleading information as to their fee practices and obligations. Any such intentional conduct or pattern and practice warrants injunctive and monetary relief under § 526.

6. This filing is intended primarily to supplement the case authorities provided in the UST's Motion.

### SUPPLEMENTAL AUTHORITY

A. **The Bankruptcy Court's Duty To Examine the Reasonableness of Fees.**

3

The Bankruptcy Code requires attorney fee disclosure so that courts can "prevent overreaching by debtors' attorneys and give interested parties the ability to evaluate the reasonableness of the fees paid." *Jensen v. United States Trustee (In re Smitty's Truck Stop, Inc.*), 210 B.R. 844, 848 (10th Cir. BAP 1997)).

"The oversight is justified by two significant concerns [including that] [d]ebtors can be exploited by overreaching lawyers who overcharge for their services." *SE Property Holdings, LLC, v. Stewart (In re Stewart)*, 970 F.3d 1255, 1259 (10th Cir. 2020) (citing H.R. Rep. No. 95–595, at 329 (1977) providing that Congress adopted § 329 because "[p]ayments to a debtor's attorney provide serious potential for evasion of creditor protection provisions of the bankruptcy laws, and serious potential for overreaching by the debtor's attorney, and should be subject to careful scrutiny"); S. Rep. No. 95–989, at 39 (1977) (same).

### B. Debtors Are Not Best Situated to Evaluate the Reasonableness of Fees.

While a chapter 7 debtor may have no complaints about attorney services, the debtor "is not well-versed on what a reasonable fee for handling a routine chapter 7 bankruptcy should run nor the services or representation that should be expected of an attorney in such a case." *In re Wood*, 408 B.R. 481, 851 (Bankr. D. Kan. 2009). It "is doubtful that a consumer debtor who has never been through the bankruptcy process and is not a sophisticated purchaser of legal services would have any real understanding, even after reading the contract, just how much actually is covered by the retainer." *In re Milner*, 612 B.R. 415, 441 (Bankr. W.D. Okla. 2019) (addressing bifuracated services retainer agreement developed by Fresh Start Funding and local attorney).

"It is clear, then, that under section 329, an attorney . . . is not always entitled to the fee that the debtor has agreed to pay him. If that were true, Congress would essentially have performed a meaningless act when it authorized bankruptcy courts to review the fees of debtors' counsel and

4

to take either of the authorized actions if the fees are found to be excessive." *Matter of Geraci,* 138 F.3d 314, 320 (7th Cir. 1998).

      **C.**      **Counsel for Debtor Bears Burden to Prove Fees are Reasonable.**

Once a question has been raised about the reasonableness of the attorney's fee under Section 329, it is the attorney himself who bears the burden of establishing that the fee is reasonable. *See Matter of Geraci,* at 318. Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir.1997). Compensation of a debtor's attorney fee may be excessive for a variety of reasons, including the size of the fee. *Milner* at 438 ("the UST has credibly raised the issue of whether the fees Sisson charged Debtor are reasonable . . . the fact that Debtor was charged either 50% or 80% more than Sisson's customary rate, in and of itself, demands a reasonableness review.").

The purpose of § 329 is to regulate an attorney's transactions with a debtor, regardless of the chapter under which the bankruptcy is filed.

    Section 329 provides in relevant part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of filing of the petition ...
>
> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment to the extent excessive, to—
>    (1) the estate, if the property transferred—
>      (A) would have been property of the estate; or
>      (B) was to be paid by or on behalf of the debtor under a plan under chapter
>         11, 12, or 13 of this title; or
>    (1) the entity that made such payment.

11 U.S.C. § 329.

Rule 2017 of the Federal Rules of Bankruptcy Procedure implements section 329. It provides in relevant part that a bankruptcy court may, after notice and a hearing, determine whether payments made to an attorney "in contemplation of the filing of a petition under the Code" is excessive. Fed. R. Bankr. P. 2017(a). It further authorizes a bankruptcy court to determine whether any payment by the debtor to an attorney after a bankruptcy petition is filed is excessive, if the payment "is for services in any way related to the case." Fed. R. Bankr. P. 2017(b).

It is unreasonable and "absurd" for a chapter 7 attorney to "up-charge" the attorney's normal customary flat fee charge by an additional $900 to $1,200 to effectuate a bifurcated fee model. *Milner* at 440 ("The justification provided by Sisson for the increased fees was additional work required by the bifurcated contract process and not receiving all of the necessary documentation pre-petition. But, at most, this would amount to another meeting to have the Post-Petition Contract signed.").

**D. The Bankruptcy Court's Local Rule Precludes Unbundling of Services for Chapter 7 Debtors.**

Shultz and Ovation's Pre-Filing Agreement impermissibly limits services and violates District of Colorado Local Bankruptcy Rule 9010-1. Under L.B.R. 9010-1(c)(1), "while the attorney remains attorney of record for the debtor in the bankruptcy case, the attorney has a duty to advise the debtor on all bankruptcy matters that arise during the course of the bankruptcy case and to represent the interests of the debtor in connection with the bankruptcy case that may affect the debtor, the debtor's property and, in the case of reorganization proceedings, property of the estate." Bankruptcy courts have a large measure of discretion in application of local rules. *In re Hensley,* 356 B.R. 68, 77 (Bankr. D. Kan. 2006).

L.B.R. 9010-1(c)(2)(C) provides that even when a debtor has not paid fees owing, "(i) An attorney for the debtor may not withdraw prior to completion of the Basic Services, as defined in L.B.R. 9010-1(c)(5), except upon a showing of good cause." Most notably, L.B.R. 9010-1(c)(1) contains the prohibition that "[a]n attorney may not circumvent this Rule by limiting services in his or her client engagement letter or in the attorney's disclosures filed in accordance with Fed.R.Bankr.P 2016." This Local Rule prohibition is further reinforced by § 526(c)(2)(B). That section provides that a debt relief agency is liable to the debtor if the debtor's case is dismissed or converted "because of such agency's intentional or negligent failure to file any required document including those specified in section 521." 11 U.S.C. § 526(c)(2)(B).

Shultz and Ovation's minimum obligations in a chapter 7 case, arising when the case is filed, include the following defined Basic Services:

> (2) Basic Services. Absent a Court order to the contrary, a debtor's attorney may not move to withdraw as attorney prior to completion of the following services (the "Basic Services"):
>
> (A) meeting with the debtor, advising the debtor, and analyzing the needs of the case;
>
> (B) preparing a complete filing package as required by Fed. R. Bankruptcy Rule 1007 and any necessary amendments thereto;
>
> (C) attending the debtor's meeting of creditors pursuant to 11 U.S.C. § 341 and any continued meetings of the same;
>
> (D) advising and assisting the debtor with any trustee requests for turnover and any audit requests from the United States Trustee.
>
> (E) advising the debtor regarding any reaffirmation agreements.

L.B.R. 9010-1(c)(5).

**E.     That the Two-Contract "Zero Down" Model is an Illusory Mechanism Which Stems From One Pre-petition Agreement.**

7

Section 329 empowers the bankruptcy courts to protect debtors from overreaching by their counsel under circumstances where debtors are vulnerable and in need of prompt legal services. *See In re Martin*, 197 B.R. 120, 125 (Bankr. D. Colo. 1996). The *Martin* opinion states:

> As a consequence, a court's review of the reasonableness of compensation under § 329 is a holistic review of the entire attorney/debtor relationship. Compensation to a debtor's counsel may be considered excessive for a number of reasons including the size of the fee, the nature of the services provided, failure to disclose the information required by Rule 2016(b), unethical conduct or other causes. *See e.g., Quiat v. Berger (In re Vann)*, 136 B.R. 863 (D.Colo.1992); *In re Land*, 943 F.2d 1265 (10th Cir.1991).

Completion of the statement of financial affairs and schedules after filing the voluntary petition is simply fee shifting debtors' pre-petition obligations to post-petition obligations. At least one bankruptcy court decision determined that "[t]his Court is of the opinion that most of the time spent by attorneys and paralegals in Chapter 7 cases is spent pre-petition. Before an attorney can properly advise a client as to whether they should (1) file for bankruptcy; (2) file a Chapter 7, or (3) file a Chapter 13, they must gather all the financial information from the client, analyze the information, and then explain the situation to the client, including at least a rough outline of what a Chapter 13 plan would look like. All that remains after that is for this information to be typed onto the forms and file the forms with the court." *In re Haynes,* 216 B.R. 440, 443 (Bankr. D. Colo. 1997).

Section 329 and Bankruptcy Rule 2016 do not contain any specific language preventing use of bifurcated contracts between a debtor and counsel, provided that one contract is actually entered into pre-petition and the second contract is actually entered into post-petition. *See Milner* at 432. The *Milner* opinion continues:

> Parties can potentially enter into a post-petition contract for post-petition services the attorney has not already agreed to perform, creating a new postpetition claim that is not dischargeable. The catch is that "the post-petition contract must really be a post-petition contract. That is, the legally operative events – the offer, acceptance,

8

and exchange of consideration (either a promise to pay or an act of payment in exchange for a promise to render services) – must in fact occur after the date of the Chapter 7 filing to qualify as a claim arising post-petition and falling outside the scope of § 362(a)(6)."

*Id. (*Citing *In re Griffin,* 313 B.R. 757 at 769-70 (Bankr. N.D. Ill. 2004).

### F. The Bankruptcy Code Requires Contracts with Attorneys to Be Clear and Conspicuous and Prohibits Misrepresentations.

The Bankruptcy Code requires a "debt relief agency," which is defined to include debtors' attorneys, *Milavetz, Gallop & Milavetz, P.A. v. U.S.*, 559 U.S. 229, 239 (2010), to execute a written contract with the debtor within five days of first providing services, but before the filing of the bankruptcy petition. 11 U.S.C. § 528(a)(1). The contract must explain "clearly and conspicuously—(A) the services such agency will provide to such assisted person; and (B) the fees or charges for such services, and the terms of payment." *Id.*

In addition, under section 526(a), bankruptcy attorneys may not:

> misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—
>
> (A) the services that such agency will provide to such person; or
>
> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title.

11 U.S.C. § 526(a)(3). And bankruptcy attorneys may not make a statement in any filed document that "is untrue or misleading, or that upon the exercise of reasonable care, should have been known . . . to be untrue or misleading." 11 U.S.C. § 526(a)(2).

A contract for bankruptcy assistance that does not comply with these provisions is void and unenforceable. 11 U.S.C. § 526(c)(1). And if there is a clear and consistent pattern of violating this section, the court may issue an injunction or impose civil penalties. 11 U.S.C. § 526(c)(5).

### G. The Role of the United States Trustee.

United States Trustees are officials of the United States Department of Justice appointed by the Attorney General to supervise the administration of bankruptcy cases. 28 U.S.C. §§ 581-589. They act in the public interest to promote the efficiency, and to protect and preserve the integrity, of the bankruptcy system. H.R. Rep. No. 95-595, at 88 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6049. They "may raise and may appear and be heard on any issue in any case or proceeding under this title," 11 U.S.C. § 307, including whether a debtor's attorney's fees are excessive, Fed. R. Bankr. P. 2017. Congress has specifically authorized United States Trustees to comment on applications for employment and compensation filed by bankruptcy professionals. 28 U.S.C. § 586(a)(3)(A), (I).

### H. Recent Decisions Regarding Bifurcation of Fees.

i.  <u>Bifurcated fee arrangements were impermissible under local bankruptcy rule [South Carolina] governing attorney's duty to provide representation.</u>  In *Prophet*, because the bankruptcy court found the bifurcated fee arrangement impermissible under its local rule, SC LBR 9011-1(b), the Court did not reach the additional issues of the reasonableness of attorney fees under § 329 or the adequacy of the disclosures under § 526 or § 528. *In re Prophet*, 628 B.R. 788 (Bankr. S.C. March 29, 2021).  "Once counsel is engaged to provide bankruptcy assistance to a debtor and a petition is filed, the scope and extent of representation under our District's Local Rule is of one unbundled package of services." *Id.* at 803-04.  The court required the attorney to return to the debtors all fees that he had received post-petition in accordance with signed post-petition agreements.

ii.  <u>Debtor's obligation to repay the filing fee to the firm [advanced by the law firm] is a prepetition obligation that is dischargeable.</u>  In *Brown*, a law firm's payment of the bankruptcy

filing fee with post-petition repayment by the debtor violates the Bankruptcy Code as well as the Florida Bar Rules. The filing fee is due upon the filing of the bankruptcy petition. *See In re Brown*, 631 B.R. 77, 102-03 (Bankr. S.D. Fla 2021).

    iii.    <u>"Extra $500" contemplated under the post-filing fee arrangement in bifurcated cases exceeded the value of the services provided by debtors' counsel.</u> In *Allen*, the Eight Circuit B.A.P. affirmed the bankruptcy court findings that debtors' counsel provided the same services he would have provided to both debtors, regardless of whether counsel's fees were paid under the pre-petition or post-petition payment option. *In re Allen*, 2021 WL 2520644 (B.A.P. 8th Cir. 2021). Debtors' counsel's contention that the bankruptcy court was required to consider the reasonableness of his fees in his bifurcated cases under a lodestar analysis - "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate" - was rejected. The B.A.P. stating "[c]ourts are not bound to apply the lodestar calculation in every case where attorney's fees are challenged." *Id.* at 4.

    iv.    <u>Bifurcated fee agreements violate United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Kentucky Rules of Professional Conduct.</u> In *Baldwin*, the bankruptcy court concluded that the bifurcated fee agreements entered into between the Debtors and Harris and the Fresh Start Funding contracts used in each of the eleven cases herein violate the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Kentucky Rules of Professional Conduct. Such contracts are not to be used by any attorney practicing bankruptcy law in the United States Bankruptcy Courts for the Western District of Kentucky. *In re Baldwin,* 2021 WL 4592265 (Bankr. W.D. Ky., October 5, 2021) *[Motion to Reconsider Order pending]*. "The Court must compare the reasonableness of the fee charged under the bifurcated contract and the fee charged under the traditional format of the full fee paid pre-petition. Any such

analysis rests on, whether the debtor receives sufficient value from the bifurcated contract model to justify the increased cost." *Id.* at 15.

WHEREFORE, for the reasons set forth herein, the UST hereby submits this Statement of Supplemental Authority.

Dated: November 22, 2021          Respectfully submitted,

PATRICK S. LAYNG
UNITED STATES TRUSTEE

By: /s/ Paul Moss
Paul Moss, #26903
Trial Attorney for the U.S. Trustee
Byron G. Rogers Federal Building
1961 Stout Street, Suite 12-200
Denver, Colorado 80294
(303) 312-7995 telephone
Paul.Moss@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify on the 22nd day of November 2021, that a copy of **UNITED STATES TRUSTEE'S STATEMENT OF SUPPLEMENTAL AUTHORITY** was served on the following parties (and any party who requested electronic notice) in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Attorney Jonathan P. Shultz; via CM/ECF
- Attorney Simon E. Rodriguez; via CM/ECF

Daniel E. Garrison, Esq.
Managing Partner & Lead Litigation Counsel
1805 North Scottsdale Rd., Ste. 100
Tempe, Arizona 85281
(via U.S. Mail and email)

/s/ Paul Moss
Office of the United States Trustee