## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>Hali Maeann Suazo<br>　　　　　　Debtor. | Case No. 20-17836-TBM<br>Chapter 7 |

### UNITED STATES TRUSTEE'S POST-TRIAL LEGAL BRIEF

Patrick S. Layng, the United States Trustee for Region 19 (the "UST"), respectfully submits this Post-Trial Legal Brief related to his pending motion pursuant to 11 U.S.C. §§ 105(a), 329(b), 526[1] and Fed. R. Bankr. P. ("Rules") 2016 and 2017, to examine the reasonableness of fees charged by debtor's counsel, Jonathan P. Shultz ("Shultz") and Ovation Law LLC ("Ovation") (the "UST's Motion") in the above-captioned chapter 7 case, to order the cancellation of attorney fee agreements, the disallowance and return of fees paid by debtor, and to enter appropriate injunctive remedies and civil penalties.

This Post-Trial Legal Brief provides further legal authority not already discussed and provided for in the UST's Motion (at Docket No. 33) and United States Trustee's Statement of Supplemental Authority (at Docket No. 61).

### POST-TRIAL LEGAL AUTHORITY

**A.    Debtor's Counsel's Disclosures Did Not Comply with Section 329 and Bankruptcy Rule 2016 as the Statement of Compensation was Inaccurate and Incomplete.**

---

[1] All references to the "Bankruptcy Code," "section," or "§" refer to Title 11, United States Code, unless expressly stated otherwise.

Shultz's Disclosure of Compensation (at Docket No. 8, Trial Exhibit 2), while not bereft of disclosure, falls well short of the accuracy and completeness required. The omissions and misstatements of the Disclosure of Compensation obscure two primary matters – first, what and when was there an agreement to provide post-petition legal services, and second, that the entire business model was premised on Shultz's contractual option to refuse to provide the Basic Services required by L.B.R. 9010-1 if Debtor did not sign the Post-Filing Agreement within 10 days.[2] The restrictions on unbundling services found in the Local Bankruptcy Rule do not stand alone; the Local Rules of the U.S. District Court also prohibit the unbundling or limiting of legal services in bankruptcy matters (with exceptions not applicable here). *See* D.C.COLO.LAttyR 2(b)(1) Standards Of Professional Conduct ("**(b) Exceptions**. The following provisions of the Colorado Rules of Professional Conduct (Colo. RPC) are excluded from the standards of professional

---

[2] The UST's Motion discusses the material matters not disclosed, inadequately disclosed, or falsely disclosed to include:

1.      Shultz failed to disclose that his providing of the Basic Services and other post-petition representation was conditioned upon Debtor entering the Post-Filing Agreement (representing that the Post-Filing Agreement had already been "entered into");

2.      Shultz failed to disclose that Debtor had to sign the Post-Filing Agreement contract within 10 days after the Petition Date for Shultz and Ovation to provide the Basic Services or other post-petition services;

3.      Shultz failed to disclose that he would "file a motion to withdraw" prior to providing the Basic Services unless Debtor signed the Post-Filing Agreement;

4.      Shultz misrepresented that as of December 9, Debtor had "signed" the "post-petition fee agreement" (¶ 9.b.) when the Post-Filing Agreement was not apparently signed until December 16;

5.      Shultz misrepresented that as of December 9, he "agreed to render service for all aspects of the bankruptcy case" (¶ 5) when, pursuant to the Pre-Filing Agreement, he had not agreed to provide post-petition services and the Post-Filing Agreement was not signed by Debtor until December 16.

responsibility for the United States District Court and the United States Bankruptcy Court for the District of Colorado: (1) Colo. RPC 1.2(c) (limiting scope of representation) . . .").

Section 329 of the Bankruptcy Code requires debtors' attorneys to file with the court a "statement of compensation paid or agreed to be paid," if such agreement was made within a year prior to the bankruptcy filing, "for services rendered or to be rendered in contemplation of or in connection with the case." 11 U.S.C. § 329(a). In addition, the statement of compensation must include "the source of such compensation." *Id.* Rule 2016(b) requires that the statement of compensation include "whether the attorney has shared or agreed to share compensation with any other entity," as well as "the particulars of any such sharing or agreement to share by the attorney." Fed. R. Bankr. P. 2016(b).

The disclosure requirements of § 329 are "mandatory, not permissive." *In re Smitty's Truck Stop, Inc.*, 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997). The statute is "designed to prevent bankruptcy attorneys from extracting more than their fair share from prospective debtors willing to do whatever is necessary to obtain their counsel of choice and avoid unfavorable bankruptcy proceedings." *In re Inv. Bankers, Inc.*, 4 F.3d 1556, 1565 (10th Cir. 1993); *In re NBI, Inc.*, 129 B.R. 212, 222 (Bankr. D. Colo. 1991). The disclosures made under § 329 must be "direct and comprehensive." *In re Woodward*, 229 B.R. 468, 474 (Bankr. N.D. Okla. 1999) "Coy or incomplete disclosures which leave the court to ferret out pertinent information from other sources are not sufficient." *In re Vann*, 136 B.R. 863, 873 (D. Colo. 1992), *aff'd without opinion*, 986 F.2d 1431 (10th Cir. 1993); *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848 ("Debtor's counsel must lay bare all its dealings . . . regarding compensation . . . .").[3]

___

[3] If an attorney's fee is challenged, the attorney bears the burden to prove its reasonableness. *Houlihan Lokey Howard & Zukin Capital v. Unsecured Creditors' Liquidating Trust (In re Comm. Fin. Servs.)*, 427 F.3d 804, 811 (10th Cir. 2005); *see also In re Geraci*, 138 F.3d 314, 318 (7th Cir. 1998); *Snyder v. Dewoskin (In re Mahendra)*, 131 F.3d 750, 757 (8th Cir. 1997).

An attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services rendered on behalf of the debtor and may be ordered to return fees already received. *See* 11 U.S.C. § 329(b); *see also, In re Inv. Bankers, Inc.*, 4 F.3d at 1565; *In re Smitty's Truck Stop, Inc.*, 210 B.R. at 848; *In re Vann*, 136 B.R. at 873. "Under abundant case law, noncompliance with Rule 2016(b), even if unintentional or inadvertent, will support the total denial of fees." *In re Vann*, 136 B.R. at 873.  The presumptive sanction for a violation of § 329(a) is forfeiture of the entire fee.  *In re Stewart*, 970 F.3d 1255, 1258 (10th Cir. 2020).

### B.    Counsel's Bi-furcation Fees Were Unreasonable.

*Measure of Reasonableness of Flat Fee Arrangements*

The non-economic factors (insufficient or incorrect disclosure and violations of rules) which may render a fee unreasonable have been discussed above and in prior UST briefing.  In chapter 7 cases, courts have expressed generally that in making the economic "reasonable value" determination, a bankruptcy court is to be guided by § 330 of the Bankruptcy Code, which sets forth a number of factors that Congress deemed relevant to an assessment of the value of professional services. *See In re Geraci,* 138 F.3d  at 318; *In re Vann*, 136 B.R. at 868; *In re Parsons*, 2010 WL 3547601 at \*4 (Bankr. D. N.M. Sept. 9, 2010)

*Section 330 and the Adjusted Lodestar*

The Tenth Circuit has held that in approving fees under 11 U.S.C. § 330(a),[4] a bankruptcy court must consider the factors under § 330[5] and also the twelve factors from *Johnson* in awarding

---

[4] Section 329 requires the attorney to show that the agreed compensation for the legal services is reasonable. *In re Mahendra*, 131 F.3d 750, 757 (8th Cir. 1997).

[5] The § 330 factors are:
    (A) the time spent on such services;
    (B) the rates charged for such services;

"reasonable" compensation to professionals, referred to as the "adjusted" lodestar.[6]  *In re Market Ctr. E. Retail Prop., Inc.*, 730 F.3d 1239, 1250 (10th Cir. 2013) (Citing to the twelve factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)[7]).   It is the party requesting fees that has the burden to establish that its request is reasonable.  *In re Market Ctr. E. Retail Prop., Inc.* at 1246.

The reviewing court must also ensure that the attorney has exercised "billing judgment," by winnowing the hours actually spent down to the hours reasonably expended. *Case v. Unified School Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998) ("Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks.").   A court

---

(C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

[6] The lodestar figure is derived by multiplying the hours counsel reasonably spent on the litigation by a reasonable hourly rate. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005).

[7] The twelve *Johnson* factors are:

(1) The time and labor required.

(2) The novelty and difficulty of the questions.

(3) The skill requisite to perform the legal service properly.

(4) The preclusion of other employment by the attorney due to acceptance of the case.

(5) The customary fee.

(6) Whether the fee is fixed or contingent.

(7) Time limitations imposed by the client or the circumstances.

(8) The amount involved and the results obtained.

(9) The experience, reputation, and ability of the attorneys.

(10) The "undesirability" of the case.

(11) The nature and length of the professional relationship with the client.

(12) Awards in similar cases.

should make reductions if the hours claimed include time for tasks that were "unnecessary, irrelevant or duplicative." *Praseuth*, 406 F.3d at 1258. The determination of what is a "reasonable time" in which to perform a given task or to prosecute the litigation as a whole can be considered by the court as to what is reasonable in a particular case and can depend upon factors. *Robinson v. City of Edmond*, 160 F.3d 1275, 1290 (10th Cir. 1998). Factors may be the complexity of the case, the number of reasonable strategies pursued, the responses necessitated by the maneuvering of the other side, and whether the tasks being billed would normally be billed to a paying client. *Id.* at 1281.

### *Applying the Adjusted Lodestar to Flat Fee Arrangements*

Some courts have opined that the many factors involved in the adjusted lodestar are likely not very germane to flat fee consumer bankruptcy cases. *See, e.g., In re Geraci,* 138 F.3d at 319 ("Geraci did not charge his clients by the hour, but quoted the clients a flat fee for the bundle of legal services required in a no-asset [chapter 7] consumer bankruptcy. Thus, the bankruptcy court was unable to compare the hourly rates of Geraci lawyers to the rates charged by comparably skilled practitioners in non-bankruptcy cases . . . was left to contemplate what such a practitioner would charge for a comparable bundle of services in a non-bankruptcy case . . . [and] nothing in the record establishes what attorneys in the community would charge in a non-bankruptcy context for such a comparable bundle of services."); *In re Hayes*, 2007 WL 7143079 at *3 (Bankr. N.D. Ga. May 23, 2007) ("This [adjusted lodestar] approach, which had its genesis in fee-shifting statutes awarding attorney's fees to a prevailing party, is not well suited to allowance of compensation when, as in this case, the client and attorney have agreed to [chapter 13] compensation based on a flat fee."). The Tenth Circuit's approach is consistent in that a court need not address every listed *Johnson* factor, especially given that some may be considered not relevant.

*Gudenkauf v. Stauffer Commc'n, Inc.*, 158 F.3d 1074, 1083 (10th Cir. 1998) (holding that not all twelve "*Johnson*" factors need to be considered).

In *In re Comm. Fin. Servs.*, 427 F.3d 804 (10th Cir. 2005), the Tenth Circuit recognized the bankruptcy court's challenges in applying the adjusted lodestar factors to a flat fee arrangement. That case involved the reasonableness of a flat monthly fees charged by a financial advisor in a chapter 11 case. The case is instructive here in at least two respects. First, the Tenth Circuit upheld the bankruptcy court's calculation and use of the investment advisor's actual historic *effective* hourly rate in comparable *prior* bankruptcy engagements to determine whether the flat monthly fee was reasonable in the case (which the bankruptcy court found it was not). *Id.* at 813 (the financial advisor "provided the bankruptcy court with fees from prior bankruptcy proceedings in which it was required to keep time records. The bankruptcy court used this evidence to calculate Houlihan's *effective* hourly rate in prior bankruptcy proceedings.") (emphasis added). Said another way, in a flat fee circumstance, the Tenth Circuit upheld the bankruptcy court's assessment of reasonableness under § 330 based on *actual* amount charged by the professional in prior bankruptcy engagements (*i.e.*, the total amount of the fee divided by the time spent); it did not rely on multiplying a hypothetical hourly rate advocated by the professional to a hypothetical amount of time the services might have taken.

Second, the bankruptcy court and Tenth Circuit rejected the investment advisor's argument that a "transaction fee" amount should be added into the calculation of the effective rate. *Id.* ("To the contrary, in the six engagements referred to by the Bankruptcy court, a success or transaction fee was not available to Houlihan Lokey, and thus not part of the available compensation package."). The analogy to Debtor's case is Shultz and Ovation's significant upcharge transaction fee they charged Debtor for the privilege of fee bifurcation. As the UST has previously briefed,

such an upcharge is impermissible because it is not compensation for services and an ill-disguised financing fee (whereas the "transaction fee" in *In re Comm. Fin. Servs.* was at least related to (and contingent upon) an actual successful bankruptcy outcome tied to the quality of the services provided).  This has led to Shultz's and Ovation's strenuous effort to advocate that an hourly rate of $350 for a hypothetical simple chapter 7 may be reasonable (*See* Trial Exhibit A); however, this rate does not specify precise attorney time needed to perform each legal task nor account for the automation of data entry by software programs, nor provides a detailed breakdown of clerical time to produce finished documents for filing Debtor's case, nor why this rate is reasonable for the preparation of a simple, uncontested, chapter 7 bankruptcy case.

The UST acknowledges that $350 hourly can be reasonable rate for a consumer bankruptcy attorney in the District of Colorado, depending on the nature, the extent, and the value of attorney legal services provided.  It is not unusual to see rates in that range for more complicated bankruptcy services; $350 per hour, however, must be measured against what the reasonable charge is for the tasks to be accomplished, which in this case were simply the required basic services and document preparation in an uncomplicated, below medium income, chapter 7 consumer bankruptcy case. Comparing the effective rate Shultz charged to represent a debtor in prior similar simple uncontested chapter 7 cases is not only justifiable under Tenth Circuit precedent but is also consistent with the statute.  Section 330 instructs the court to look at: "the *nature,* the *extent,* and the *value* of such services," as well as the *time* spent on such services. 11 U.S.C. § 330(a)(3) (emphasis added).[8]

---

[8] Again, as a best estimation of an "effective rate," Trial Exhibit 25 reflects Shultz charged between $899 and $1,700 for a typical, simple consumer chapter 7 bankruptcy case such as Debtor's prior to his relationship with Ovation.  At the higher end, Shultz and Ovation's upfront fee quote for a normal uncomplicated consumer chapter 7 bankruptcy case is closer to $1,900 (*See* Trial Exhibit 6, the Pre-filing Agreement Option #1).  But there was no evidence that that up front rate was actually ever charged in a non-bifurcated case by Counsel for Debtor and ought not serve as evidence of a reasonable rate.

Other cases have similarly expressly approved the reduction of fees in a chapter 7 case based on its routine nature and the "customary legal fees" awarded for such cases. In addition to the cases cited in the UST's prior briefing, *see also*, *Geraci*, 138 F.3d at 319 (approving court's comparison of flat fees charged in similar routine chapter 7 cases to determine excessiveness); *Mahendra*, 131 F.3d at 758.

And even if the bankruptcy court were inclined to apply the adjusted lodestar method without comparison to a prior effective rate, Shultz and Ovation failed to provide evidence upon which it could do so.   Again, under the lodestar method, "the number of hours reasonably expended on the litigation [is] multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.* "Where the documentation of hours is inadequate, the [trial] court may reduce the award accordingly." *Id.*  Shultz and Ovation, however, did not provide any evidence of the time actually spent on Debtor's case or that a rate of $ 350 per hour is a reasonable hourly rate to perform the basic services in chapter 7 consumer bankruptcy cases.   Shultz and Ovation only introduced Trial Exhibit A, a demonstrative exhibit, which purported to reflect hypothetical time that might have been expended.   It did not reflect the actual time spent on Debtor's case.   And consistent with the illusory nature of the fee arrangement, Shultz and Ovation included in that exhibit substantial pre-petition services as part of the justification for the purported post-petition fee.

There is also no evidence that the significantly higher fee charged in this case was warranted under the remaining adjusted lodestar factors. The same is true regarding the other Ovation/Fresh Start Funding cases presented at trial.  In the same way the transaction fee add-on

was rejected in *In re Comm. Fin. Servs.*, the Court ought to reject Shultz and Ovation's similar effort to inflate the reasonable cost of a simple chapter 7 consumer bankruptcy filing here.

### C.   Counsels' Bifurcated Fee Agreements, in Failing to Disclose that "Basic Services" Must Be Provided under L.B.R. 9010-1 Also Violate the Code's Debt Relief Agency Provisions.

An attorney providing legal services to consumer debtors, is a "debt relief agency" within the scope of §§ 526 and 528. *See* 11 U.S.C. § 101(3), (12A) (defining a "debt relief agency" as including any person who provides bankruptcy assistance to certain consumer debtors in return for compensation, with some exceptions not applicable here).

Under § 528, there must be a written contract that "clearly and conspicuously explain[s] the services that will be provided to the debtor, the fees and costs for such services, and the terms of payment." *See* 11 U.S.C. § 528. Section 526(a)(2) provides also that a debt relief agency shall not "make any statement . . . in a document filed in a case . . . that is untrue or misleading." Section 526(a)(3) provides also that a debt relief agency shall not misrepresent, directly or indirectly, affirmatively or by omission, the services that such agency will provide, or the benefits and risks that may result if a person becomes a debtor. Section 526(c)(1) of the Bankruptcy Code provides that a debt relief agency's contract with a debtor shall be void if it does not comply with the material requirements of § 528.

Debtor's counsel violated all these provisions in this case and in the other cases presented by the UST. Debtor's counsel failed to disclose or explain in the Pre-Filing Agreement that upon filing Debtor's case, they were already required to provide the Basic Services and would not be allowed to withdraw under the Local Rules until the Basic Services were completed. As discussed in Part A above and in the UST's Motion, they failed to fully describe in their Rule 2016

disclosures their intent to withdraw from cases before performing the Basic Services, making such disclosures misleading. And thus, their zero down business model in which their agreements and disclosures omitted vital information and were misleading displayed a pattern and practice of violating the Local Rules, §§ 526(a)(1), (2), and (3), and § 528 warranting the relief sought in the UST's Motion.[9]

WHEREFORE, for the reasons set forth herein, the UST hereby submits his United States Trustee's Post-Trial Legal Brief.

Dated: December 22, 2021                    Respectfully submitted,

                                            PATRICK S. LAYNG
                                            UNITED STATES TRUSTEE

                                            By: /s/ Paul Moss
                                            Paul Moss, #26903
                                            Trial Attorney for the U.S. Trustee
                                            Byron G. Rogers Federal Building
                                            1961 Stout Street, Suite 12-200
                                            Denver, Colorado 80294
                                            (303) 312-7995 telephone
                                            Paul.Moss@usdoj.gov

---

[9] Further, they displayed a pattern of surcharging their clients for the privilege of fee bifurcation, a charge that, as discussed above, is unreasonable and not related to services provided in the case. Counsel should be enjoined from such practice under § 105 as requested in the UST's Motion.

## CERTIFICATE OF SERVICE

I hereby certify on the 22nd day of December 2021, that a copy of **UNITED STATES TRUSTEE'S POST-TRIAL LEGAL BRIEF** was served on the following parties (and any party who requested electronic notice) in compliance with the Federal Rules of Bankruptcy Procedure and the Court's Local Rules:

- Attorney Jonathan P. Shultz; via CM/ECF
- Attorney Simon E. Rodriguez; via CM/ECF

Daniel E. Garrison, Esq.
Managing Partner & Lead Litigation Counsel
1805 North Scottsdale Rd., Ste. 100
Tempe, Arizona 85281
(*via* U.S. Mail)

/s/ Paul Moss
Office of the United States Trustee